OPINION
Gerard A. Loughran is appealing from the decision of the Kettering Municipal Court, after a bench trial, finding him guilty of failing to maintain an assured clear distance. The only assignment of error is that the decision was against the manifest weight of the evidence.
We note that in weight of the evidence challenges, this court
 "[R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In a weight of the evidence challenge, we defer to the fact finder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288, unreported. This standard allows us to "judge the credibility of opposing opinion testimony, but not of fact testimony, unless it is so incredible that it defies belief." City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97-CA-110, unreported.
Loughran was cited following a head-on collision, albeit a minor one causing only slight damage, between the car he was driving and one being driven by Jennifer Weaver in the afternoon on Stroop Road in the City of Kettering, Ohio. The evidence of the incident presented by the two parties is markedly in conflict. Weaver testified that she was driving westbound on Stroop Road and came to a dead stop in the left-turn lane preparing to turn into the grounds of the Miami Valley Animal Hospital. (Tr. 1-2). While she was still completely stopped, she noticed an eastbound car on Stroop Road that was veering toward her. She stated: "The front end of his car went into the front end of my car." (Tr. 3). This version of the event was supported by the testimony of Officer Michael Mannix of the Kettering Police Department, who when asked, when he got to the scene, where the vehicles were placed, he responded: "Mr. Loughran's vehicle was placed left of the left-through lane, and the other lady's car was in the left-turn lane facing westbound." (Tr. 10). In addition, Mr. Robert Craven, who arrived on the scene "shortly after the accident" (Tr. 16) testified that when he arrived there, the vehicles were "nose to nose." Id.
Loughran, on the other hand, testified that: "As I was starting to pull out of the driving lane into the turning lane, this car suddenly appeared in front of me. Made a swift turn. And, I was going about oh, fifteen or twenty miles an hour, I have traction control on my new Pontiac and I just stopped. And, this car hit me in the front." (Tr. 18). He testified he was struck on the right side of the front of his car and put into evidence a color photo of a Pontiac which showed a very slight indentation on the right middle of its bumper. Basically, his entire argument is that his testimony is more credible since it shows no damage to the left front of his car and a slight amount of damage to the right side of the middle of his bumper.
Here again is another classic case of the trial judge being forced to choose between two conflicting sets of testimonies. The trial court obviously believed the testimony of the complaint, the police officer, and a disinterested witness, as against the testimony of the defendant. In this case, however, there is more to the resolution of the credibility issue than a simple judgment call by the trial court. His decision was undoubtedly influenced by the testimony of the three prosecution witnesses regarding the actions and demeanor of the defendant immediately following the accident. Weaver testified that immediately following the accident she got out of her car and walked to the defendant's passenger side and "asked him if he was O.K." (Tr. 4). Whereupon he "Just looked at me blankly and just looked at me like I, he didn't know what I was saying. And, then he just . . . I said are you O.K. and he said yeah. Just that one word." Id.
Officer Mannix testified about his encounter with the defendant as follows:
 Q. All right. And, did you talk to the defendant about this case?
A. Yes, I did.
Q. What was he able to tell you about the accident?
 A. He told me that, at first he told me he wasn't involved in an accident. And, I told ___ I was lookin' at his car and I saw some damage on there and I said, well, explained that I saw some damage there. He said there was no damage. I said well, it looked new to me. And, talked to him a little longer, he said that the other lady backed into him.
Q. Had what?
A. Had backed into him.
Q. Okay.
 A. And I explained to him, I said well, I don't see how that could happen when it was a head-on collision.
Q. Uh-huh.
 A. And, he seemed very confused and did not really know how the accident happened.
 Q. Could he give you a description of how the accident happened?
 A. I had him write out a statement for me and all he put down was that he was going eastbound on Stroop.
(Tr. 11-12).
The traffic crash witness statement by Loughran was entered into evidence, and in Loughran's own handwriting, he states that:
"Going east on Stroop Road, stopped in back of car." (State's exhibit 1).
Witness Craven testified that: ". . . he had wandered over to a late `70 or late `80's, early `80's a greenish-gray automobile and was trying to get into it with his keys. And, then he moseyed over to the next car which was about the color of his car, and tried to get in with the keys. That's when I became aware that something was really bad wrong." (Tr. 16-17).
Loughran denied all this testimony, but he was unable to explain his own handwritten witness statement.
After Loughran testified, the State presented as a rebuttal witness, retired Dayton Police Officer Brooks Kirkland who was at the scene of the accident and testified that having police experience he decided to attempt to assist the drivers. He was asked if he noticed anything unusual about defendant's behavior, and he responded as follows:
A. Very much so.
Q. What was it? Describe it for us Lieutenant.
 A. I did not witness the accident, I heard the impact. I went over first to the van that the lady was sitting in to check on her condition. She indicated she was okay. I then approached this gentleman's car, asked him if he was okay and he shook his head in an affirmative, yes, motion. His car was still running. It was still in gear and it was completely against the front end of her van. I asked him to turn his vehicle off, and he looked at me without saying anything and, using her terminology, he sort of had a blank look on his face. I again asked him to turn the car off. And, he sort of looked at the interior and I reached down and pointed to the gear shift which was on the console and I said put your car in park. He did that. I had to ask him again to turn the car off. He finally did. I again asked him if he was okay, and that time he did not answer me. I subsequently walked away from the car I think maybe to check on her again. I eventually walked back over to his car, he was still seated in the driver's seat and I noticed movement in the car. And, as I got closer, he was trying to put the key back into the ignition. And, I asked him what he was doing and he said he had to go, he had to leave. And, I said, you shouldn't leave, you've been involved in an accident. He said no, I haven't. And, I said, sir, you hit this car in front of you and again he said no, no, she needs to move her car so I can go, be on my way, something to that effect. And, he started his car again at that point. And, put it in reverse and backed up maybe a foot or less and I just sort of grabbed him on his left shoulder through the open window and said you really can't go anywhere, you need to turn your car off and he put it in gear again, but he didn't turn it off. Then he tried to take it out of gear again and this went back and forth between he and I trying to get him to stay there and he finally got it turned off again. And, I think by that time the officer arrived on the scene.
(Tr. 24-26).
Given all this testimony about the defendant's somewhat bizarre behavior at the scene of the accident, it is no wonder that a trial court found the State's version of the incident entirely credible as against the defendant's version. As to the picture, no evidence was presented as to when it was taken. Moreover, it is entirely reasonable, as the State points out in its brief, that the very slow speed collision would cause minor damage to the middle of the right front of the defendant's vehicle even though the cars were virtually "nose to nose."
As we have stated many times before, (see e.g., City of Dayton v.Ronald J. Versic (Mar. 15, 1996), Montgomery App. No. 15223, 86, unreported), it is settled law that credibility is for the trier of the facts and "where there exists competent credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v. Garson
(1993), 66 Ohio St.3d 610, 614. We will not disturb the choice made by the trier of the fact between witnesses and conflicting testimony unless it is so incredible that it defies belief, and we do not find the trier's choice at all incredible here. City of Fairborn v. Boles (May 15, 1998), Greene App. No. 97 CA 110, unreported.
The assignment of error is overruled, and the judgment is affirmed.
BROGAN, J. and WOLFF, J., concur.